# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:09-CR-240 |
| | § | Judge Crone |
| SALVADOR GARCIA-RUIZ | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Evidence and Statements (Dkt. #29). Having considered the relevant pleadings, and argument and testimony given at the February 23, 2010 hearing, the Court is of the opinion that Defendant's motion should be denied.

## BACKGROUND

Defendant is charged with Conspiracy to Distribute or Dispense or Possess with Intent to Distribute or Dispense Methamphetamine in violation of 21 U.S.C § 846 and Possession with the Intent to Distribute or Dispense Methamphetamine in violation of 21 U.S.C. § 841(a)(1). Defendant seeks to suppress all evidence seized in connection with the October 22, 2009 search of Defendant's vehicle. Defendant argues that all evidence must be suppressed because the stop of Defendant's vehicle and the subsequent search of the vehicle were made without a warrant and made without probable cause. The Government argues that there was probable cause to make the stop of Defendant's vehicle, an inventory search of Defendant's vehicle was proper, and that there was sufficient reasonable suspicion to prolong the stop after Defendant's arrest because law enforcement believed Defendant's vehicle contained narcotics.

At the February 23, 2010 hearing, the Government offered the testimony of Lieutenant David Scott and Investigator Richard Smith of the Denton County Sheriff's Department.

*Lieutenant Scott*

Lieutenant William David Scott ("Scott") of the Denton County Sheriff's Department Drug Enforcement Section testified for the Government. Scott received information from a confidential informant ("CI") that a transaction for a large amount of methamphetamine would take place at a Shell station in the area of Interstate 35W and Highway 114 in Denton County, Texas. The CI told Scott that a vehicle would come from Fort Worth, Texas, on October 22, 2009, carrying the methamphetamine and meet the CI at the Shell station. There, the CI planned to purchase two to three pounds of methamphetamine. Scott considered the CI to be reliable and telling the truth because the CI had worked with Scott and other law enforcement officers on twelve to fifteen other occasions. On these prior occasions, the information provided by the CI was always correct.

On October 22, 2009, Scott and other officers set up surveillance of the Shell station. Scott, driving an undercover vehicle, parked at the gas pumps facing to the east. The CI was parked in a black truck in the Shell parking lot, to Scott's left. Scott observed a purple Ford F-150 pickup truck, driven by Defendant, drive into the station and park near the CI's vehicle. Defendant got out of his vehicle with something in his hand and walked around the parking lot while a passenger ("Co-Defendant") remained in the vehicle. Scott later learned that Defendant was carrying an air tank, but did not fill the tank. Scott believed that Defendant was conducting counter-surveillance in order to see if law enforcement was present. While Defendant was walking around the parking lot, the CI left his vehicle and walked to the passenger side window of Defendant's truck in order to speak to Co-Defendant.

Defendant soon returned to the purple truck, and the CI returned to his own truck at about the same time. Scott received a cell phone call from the CI stating that Defendant and Co-Defendant

2

were suspicious of Scott's vehicle and wanted to complete the transaction elsewhere. The CI told Scott that the methamphetamine was in the bed of Defendant's truck. The CI left the Shell station traveling north on Interstate 35W and Defendant and Co-Defendant followed. Scott followed the two vehicles at a safe distance. At this time, Scott believed he had probable cause to pull over Defendant's vehicle and place Defendant under arrest. However, Scott decided that having Defendant pulled over for a traffic violation by a uniformed officer might protect the identity of the CI.

Scott called Sergeant Jeff Davis ("Davis") of the Denton County Sheriff's Department, who was participating in the surveillance, and requested that a marked patrol car stop Defendant's vehicle. The uniformed officer was to develop probable cause on his own and pull over the vehicle. Soon after calling Davis, Defendant's truck was pulled over by Smith. Scott watched the detainment, arrest, and subsequent search from a distance so as not to give away his presence. Smith discovered a large quantity of methamphetamine in the back of Defendant's truck.

*Investigator Smith*

Smith was assigned to the Interstate 35W area in Denton County, Texas, on October 22, 2009. At approximately 3:00 P.M. that afternoon, Smith received a phone call from Davis stating that there was a narcotics investigation going on in the area and that Smith may be needed to assist undercover officers. At approximately 4:30 P.M., Smith received a second call from Davis stating that a purple Ford F-150, driven by Defendant, was traveling north on Interstate 35W and contained a large amount of narcotics. Smith was to develop probable cause to pull over the vehicle.

Smith was sitting in his vehicle on the east side of Interstate 35W northbound when Defendant's truck passed him. Within a quarter of a mile after passing Smith, Defendant's vehicle

drove onto the improved shoulder, which is a traffic violation. Smith pulled his vehicle behind Defendant's truck. Smith observed Defendant's truck fail to maintain a single lane, which is another traffic violation. Further, Smith observed pieces of cardboard in the bed of Defendant's truck that were blowing in the wind, which is a traffic violation for not properly securing a load. Based upon the three traffic violations and the belief that Defendant's vehicle contained narcotics, Smith felt that he had probable cause to pull over Defendant's vehicle.

Defendant pulled to the side of the highway without incident. Smith requested Defendant's driver's license and registration. Smith had Defendant leave the truck and talk to him at the rear of the vehicle. Defendant gave Smith a Mexican driver's license and Smith did not know if the license was valid. Later, Smith found out that the license was expired. Smith told Defendant that he could not drive in Texas with the license. There was no date of birth on the license. Smith believed that Defendant had thirty days after entering the United States to get a driver's license and that Defendant's license was no longer valid because Smith believed Defendant had lived in Ft. Worth, Texas, for over thirty days. Smith noticed that Defendant smelled strongly of burnt marijuana. Smith inquired about the marijuana smell and Defendant stated that he had been smoking a cigar. At this time Smith placed Defendant under arrest for not having a valid driver's license. Smith asked Co-Defendant if he had a valid driver's license, and he did not. Smith had both Defendant and Co-Defendant sit in the grass next to the highway. He informed Defendant that he was under arrest and informed Co-Defendant that he would arrange transportation for him.

Smith then began to inventory the vehicle and started completing the standard paperwork required during an inventory. Smith believed that an inventory was proper for two reasons. First, because law enforcement believed that narcotics were contained in the truck. Second, the truck

would need to be towed and an inventory of the vehicle is required under department policy before towing. Smith began to inventory all items found in Defendant's truck. In the bed of the truck he found a plastic bag. There were two boxes inside the bag. Both of the boxes contained methamphetamine. Smith informed Defendant and Co-Defendant that they were under arrest for possession of the methamphetamine. Smith believes that he found the methamphetamine approximately fifteen minutes after pulling over Defendant's vehicle. After transferring custody of Defendant and Co-Defendant to other law enforcement officers, Smith completed the required inventory paperwork and transferred possession of Defendant's truck to a tow truck service.

## ANALYSIS

The Fourth Amendment ensures that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The warrantless search of an area in which the Defendant has a privacy interest is per se unreasonable, unless the Government can show that an exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). Fourth Amendment jurisprudence recognizes several warrant exceptions. The Supreme Court held that an officer may perform a warrantless search of a home incident to arrest, so long as the search is limited to the area within the arrestee's "immediate control," which means "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). The Supreme Court applied the holding in *Chimel* to occupants of automobiles in *New York v. Belton*, 453 U.S. 454 (1981). The Court held that an officer who arrests "the occupant of an automobile...may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers found inside. *Id.* at 460.

The search incident to arrest exception was recently limited by the Supreme Court decision of *Arizona v. Gant*, 129 S.Ct. 1710 (2009). In *Gant*, officers arrested a driver for a suspended license, handcuffed him, and placed him in the back of a police car. Officers searched the interior of the car that the arrestee had exited, uncovering a gun and a bag of cocaine. *Id*. at 1714-16. In holding that this search violated the Fourth Amendment, the Supreme Court rejected a broad interpretation of *Belton* that would permit a search of the entire passenger compartment of a vehicle with no regard to whether the interior compartment was actually accessible to the arrestee at the time of the search. *Id*. at 1719. Instead, the warrant exception described in *Chimel* only applies to an officer "search[ing] a vehicle incident to a recent occupant's arrest...when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. The Court noted that under this rule, "it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." *Id*. at 1719 n. 4 (citation omitted).

While *Gant* limits the search incident to arrest exception, *Gant* also affirms the viability of the probable cause exception for automobiles. *Id*. at 1719. When searching a vehicle without a warrant, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." *United States v. Ross*, 456 U.S. 798, 809 (1982). "An individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Id*. at 823. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825. In *Gant*, the Supreme Court notes that "*Ross* allows searches for evidence relevant to offenses other than the

offense of arrest, and the scope of the search authorized is broader." *Gant*, 129 S.Ct. at 1721. Therefore, if the law enforcement officers had probable cause, then Defendant's motion to suppress should be denied.

Probable cause is defined as "whether at that moment the arrest was made, the officers had...facts and circumstances within their knowledge and of which they had reasonably trustworthy information that was sufficient to warrant a prudent man in believing that [Defendant] had committed or was committing an offense." *Charles v. Smith*, 894 F.2d 718, 723 (5th Cir. 1990) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). "The existence of probable cause is determined by reviewing the totality of the circumstances." *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The facts here are similar to the facts in *Ross*, and the Court finds that the same reasoning allowing a legal search in that case allows the search of Defendant's vehicle. In *Ross*, the Supreme Court held that officers had probable cause to search the trunk of arrestee's vehicle without a warrant after they arrested him for dealing narcotics, because a reliable informant gave a detailed description of arrestee's narcotics sales and a detailed description of arrestee's vehicle which was used during the narcotics sales. *See Ross*, 456 U.S. at 800. Here, Scott had probable cause to believe that a large quantity of methamphetamine was in Defendant's truck and he therefore had probable cause to search Defendant's truck. Scott testified that the informant was considered reliable because he had supplied law enforcement with narcotics information on twelve to fifteen prior occasions and that each time the informant's information was correct. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983) (an officer may rely on information provided by a confidential informant when, based on the totality of the circumstances, he determines that the information is sufficient to establish probable cause

based upon the informant's veracity, reliability, and basis of knowledge); *See also U.S. v. Jackson*, 818 F.2d 345, 348 (1987) (when determining probable cause, the reliability of an informant may be established by showing that the informant previously provided information that proved to be correct); *U.S. v. Phillips*, 727 F.2d 392, 396 (5th Cir. 1984) (when establishing probable cause, "the most common method" used to establish the credibility of an informant's information is showing that "the informant has previously given tips that proved to be correct").

While Scott considered the informant to be reliable, he and other officers corroborated the informant's information through surveillance. Scott observed the Defendant arrive at the Shell station that the informant identified. Scott observed Defendant conduct "counter-surveillance" that is indicative of narcotics trafficking. Scott observed the informant and Co-Defendant have a conversation, which, under the circumstances, Scott believed was in regard to a methamphetamine transaction. Soon after returning to his own vehicle, the informant called Scott and told him that the methamphetamine was in the bed of Defendant's truck. The informant said that Defendant and Co-Defendant were suspicious of Scott's vehicle and wanted to make the transaction in another location. Scott had probable cause to arrest Defendant at that time because the information from the informant was coupled with additional circumstances that indicated a narcotics transaction was taking place or would take place. Therefore, Scott had probable cause to search Defendant's vehicle, including the truck bed, for contraband. *See United States v. Steele*, No. 09-100019, 2009 WL 4039444 *2 (5th Cir. November 23, 2009) (officer had probable cause to search vehicle, including a compartment under the carpet in the trunk of the vehicle, based upon information provided by an informant that was corroborated by the officer).

Scott had probable cause to arrest Defendant at the Shell station; however, Scott asked Davis

8

to have a uniformed officer pull over Defendant's vehicle in order to protect his informant. Based upon Scott's knowledge of the narcotics transaction, Smith also had probable cause to believe Defendant was participating in illegal activity. *See United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007) ("Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts"). A review of the totality of the evidence, including the collective knowledge and experience of all of the officers involved, indicates that Smith received reliable information from other officers who had probable cause to arrest Defendant and search Defendant's vehicle. Therefore, the search of Defendant's vehicle was proper under the automobile exception discussed in *Ross*.

Additionally, even if there was not probable cause to search Defendant's vehicle for drugs, the Court finds that Smith properly pulled over Defendant's vehicle, placed Defendant under arrest, and searched Defendant's vehicle. The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). Under the two-part *Terry* inquiry, the Court asks whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified interference in the first place." *Id*. at 19-20. For a traffic stop to be justified at its inception, "an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Here, Smith observed Defendant violate two different traffic laws, giving Smith probable cause to make the initial stop of Defendant's vehicle.

As for the second prong of the *Terry* analysis, generally, the "detention must be temporary

and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). In the course of making the stop, an officer may examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. *Id*. Here, Smith properly placed Defendant under arrest for not having a valid driver's license.[1] Once Smith determined that neither Defendant nor Co-Defendant had a valid driver's license, Smith knew that he would have to request a tow truck to remove Defendant's truck from the highway.

When a vehicle is towed, Smith is required by department policy to conduct an inventory of the vehicle. "An inventory search is a well-established exception to the Fourth Amendment's warrant requirement, but it cannot be subterfuge for criminal investigations." *United States v. Swan*, 259 F. App'x 656, 660 (5th Cir. 2007) (citing *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)). "In order to prevent inventory searches from being used as a 'ruse for a general rummaging in order to discover incriminating evidence[,]...inventories [must] be conducted according to standardized criteria' that are 'consistent with the proper purpose of a noninvestigative inventory search." *Id*. (Citations omitted). Here, while Smith did believe that the vehicle contained narcotics, there is no evidence in the record that he did not complete the inventory paperwork in order to meet the "standardized criteria...of a noninvestigative inventory search." Further, even if Smith "was not conducting an inventory search at the time" the methamphetamine was discovered, "an inventory search was an inevitable consequence" of Defendant and Co-Defendant's failure to maintain valid driver's licenses. *Id*.

---

[1] Operating a motor vehicle on a public roadway with an invalid driver's license is a violation of Section 521.457 of the Texas Transportation code validating arrest of the driver of the vehicle. *See U.S. v. Salinas*, 665 F. Supp. 2d 717, 717 (W.D. Texas 2009).

In *United States v. Fields*, 72 F.3d 1200 (5th Cir. 1996), the Fifth Circuit upheld a district court's denial of a motion to suppress evidence on facts similar to the facts here. In *Fields*, an officer stopped the defendant's vehicle for a seatbelt violation. *Id*. at 1212. The officer then found that the defendant had an invalid driver's license and no proof of insurance, requiring the officer to arrest the defendant and impound the vehicle. *Id*. The officer conducted an inventory search which led to the discovery of a large amount of currency and a firearm. *Id*. The Fifth Circuit found that the inventory search was part of police department policy for impounded cars and that the search was proper. *Id*. at 1213. Here, Smith followed department policy for impounded vehicles, which led to the discovery of the methamphetamine. Whether or not Smith stopped Defendant's vehicle with the intent to search it for methamphetamine does not violate the Fourth Amendment. *Id*. at 1212. "[S]o long as the police do no more than they are objectively authorized and permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *Id*. Therefore, because Smith followed the department procedure for inventory searches following a valid traffic stop, the search of Defendant's vehicle was proper.

Based upon the foregoing, the Court finds that the motion to suppress should be denied.

**RECOMMENDATION**

The Court recommends that Defendant's Motion to Suppress should be DENIED.

Upon agreement of the parties, within five (5) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the

district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 1st day of March, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE